**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ROBERT S. KELLY, p/k/a "R. KELLY", is an individual residing in Cook County, Illinois,** <br><br>**PLAINTIFF,** <br><br>**v.** <br><br> **Kirk Burrowes, an individual residing in New York; The KB Group, an entity with its principal place of business in New York; Unison Entertainment Enterprises, an entity with its principal place of business in Ontario, Canada; RMG Real Music Group, Inc., an entity with its principal place of business in Ontario, Canada; Thomas Tripodi, an individual residing in Ontario, Canada; <u>Ticketbreak.com</u> with its principal place of business in Ontario, Canada; Maple Core, Ltd., with its principal place of business in Ontario, Canada; G98.7 FM (CKFG), an entity with its principal place of business located in Ontario, Canada; Julz Media, an entity with its principal place of business located in Ontario, Canada; Julius Ossum, an individual residing in Ontario, Canada; Art Dukes, an individual residing in New York; Visual Rhodes, Inc., an entity with its principal place of business located in Ontario, Canada; and Niagara Parks Commission Administration, an agency of the government of Ontario, Canada,** <br><br>**DEFENDANTS.** | **Case No.:** <br><br><br> **Honorable _____Presiding** <br><br><br><br> <u>**Jury Demand**</u> |

1

## COMPLAINT

Plaintiff Robert S. Kelly (the performer known as "R. Kelly") (hereinafter collectively referred to as "Plaintiff Kelly") by and through his attorneys, Law Office of Heather L. Blaise, P.C., brings this action against Kirk Burrowes, an individual residing in New York; The KB Group, an entity with its principal place of business in New York; Unison Entertainment Enterprises, an entity with its principal place of business in Ontario, Canada; RMG Real Music Group, Inc., an entity with its principal place of business in Ontario, Canada; Thomas Tripodi, an individual residing in Ontario, Canada; Ticketbreak.com with its principal place of business in Ontario, Canada; Maple Core, Ltd., with its principal place of business in Ontario, Canada; G98.7 FM (CKFG), an entity with its principal place of business located in Ontario, Canada; Julz Media, an entity with its principal place of business located in Ontario, Canada; Julius Ossum, an individual residing in Ontario, Canada; Art Dukes, an individual residing in New York; Visual Rhodes, Inc., an entity with its principal place of business located in Ontario, Canada; and Niagara Parks Commission Administration, an agency of the government of Ontario, Canada, (hereinafter collectively referred to as "Defendants") as it relates to Defendants' breach of contract of a performance agreement and unauthorized use of Plaintiff Kelly's name, likeness and tradename in connection with offering goods and services and in support, Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.   This Court has Diversity Jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and citizens or subjects of a foreign state and the amount in controversy exceeds the sum or value of $75,000.

2.  This Court also has jurisdiction under and this Court has federal jurisdiction pursuant to 28 U.S.C. § 1338(a) because the claims for trademark infringement and false endorsement fall under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

3.  This Court has supplemental subject-matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the negotiation and acceptance of the contract substantially occurred in this district; the injury of Defendants' breach of the contract occurred in this district; the injury to Plaintiff of Defendants' unauthorized use of Plaintiff's name and likeness occurred in this District, the injury to Plaintiff resulting from Defendants' unfair and deceptive trade practices and false endorsement occurred in this District; and Defendants are either foreign entities or regularly conduct business in this District, and the Plaintiff is a resident of this District.

## PARTIES

5.  Plaintiff Robert S. Kelly is the performing artist known as "R. Kelly" and is an American singer-songwriter, record producer and rapper who has sold more than 40 million albums worldwide. Plaintiff Kelly is now, and at all times mentioned in this Complaint was, a citizen of the United States, residing in Chicago, Illinois, Cook County.

6.  Plaintiff Robert Kelly is also the owner of the United States trademark "R. Kelly" as it relates to entertainment services in the nature of live musical performances.

7.  Kirk Burrowes, is on information and belief an individual residing in New York and the principal of Defendant The KB Group and is a promoter.

8.  The KB Group, is on information and belief, an entity with its principal place of business in New York and is a promoter.

9. Unison Entertainment Enterprises, is an entity with its principal place of business in Ontario, Canada and is a promoter.

10. RMG Real Music Group, Inc., is an entity with its principal place of business in Ontario, Canada and is a promoter.

11. Thomas Tripodi, is on information and belief an individual residing in Ontario, Canada and the principal of Defendant The Real Music Group Inc. and is a promoter.

12. Julz Media, is an entity with its principal place of business located in Ontario, Canada.

13. Julius Ossum, is an individual residing in Ontario, Canada.

14. Julz Media and Julius Ossum are the registered owners of the website: www.oneloveniagara.com.

15. Art Dukes is, on information and belief, an individual residing in New York and is a promoter.

16. Visual Rhodes, Inc., is an entity with its principal place of business located in Ontario, Canada and is a promoter.

17. Ticketbreak.com is an entity with its principal place of business in Ontario, Canada and is the entity that sells tickets to the concert the subject of this lawsuit.

18. Maple Core, Ltd., is an entity with its principal place of business in Ontario, Canada and is the parent company of Ticketbreak.com.

19. G98.7 FM (CKFG), an entity with its principal place of business located in Ontario, Canada and is a radio station that is promoting the concert the subject of this lawsuit.

20. Niagara Parks Commission Administration, an agency of the government of Ontario, Canada.

21. At all times herein mentioned, all Defendants, both individually and collectively, are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

22. Each Defendant had actual and/or constructive knowledge of the acts of the other defendant(s) as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the breaching and/or infringing acts of the other, and/or retained the benefits of said breaching and/or infringing acts.

23. As a result, each and every defendant should be held jointly and severally liable for the actions and/or omissions complained of herein.

## FACTS

24. Plaintiff realleges and incorporates by reference Paragraphs 1 through 23 of this Complaint, as if fully alleged herein.

25. Defendants are promoters and/or owners of a certain music festival known as "One Love Order at the Border, Niagara Falls, Canada" (hereinafter the "Concert") which is scheduled to be held on July 4th-6th 2014.

26. Defendants solicited Plaintiff Kelly to perform at the Concert and the representatives for Defendants and Plaintiff Kelly engaged in negotiations for a period of approximately four (4) weeks.

27. On or about June 19, 2014, the parties finally reached an oral agreement regarding the material terms of Plaintiff Kelly's performance: namely that Defendant promoters and owners of the Concert would pay Plaintiff Kelly a performance fee in the amount of

5

$200,000.00 (Two Hundred Thousand U.S. Dollars) for a 60 minute performance and a 30 minute meet and greet on either July 5th or 6th 2014.

28. On June 20, 2014, Defendants, through The KB Group, sent Plaintiff Kelly a written offer which included the material terms under which the parties had already agreed to in principal: Plaintiff Kelly would be paid a performance fee in the amount of $200,000.00 (Two Hundred Thousand U.S. Dollars) for a 60 minute performance and a 30 minute meet and greet on either July 5th or 6th 2014. *See* June 20, 2014 Written Offer, attached as Exhibit A.

29. In furtherance of the offer, Defendant Visual Rhodes, Inc. wired payment in the amount of $99,000.00 (Ninety Nine Thousand U.S. Dollars) to the account of Defendant co-promoter, Art Dukes to be tendered to Plaintiff Kelly upon acceptance of the offer.

30. On June 23, 2014 at 10:46 a.m., Plaintiff Kelly, through his authorized agent, accepted the written offer for $200,000.00 with a long form agreement addressing additional customary terms and riders. *See* Written Acceptance, attached as Exhibit B.

31. Later on June 23, 2013, despite Plaintiff Kelly's unequivocal acceptance of the Offer, Defendant Visual Rhodes, Inc. informed Plaintiff Kelly that it and the other Defendants did not intend to honor their agreement with Plaintiff Kelly and requested that the funds held by Art Duke be returned to Defendant Visual Rhodes, Inc.

32. Despite the fact that Defendants and Plaintiff Kelly had not reached an agreement as to material terms of the engagement until on or about June 19, 2014, Defendants nevertheless began promoting the Concert by advertising that "R. Kelly" would be performing and used Plaintiff Kelly's stage name and likeness in promoting the Concert.

33.     For instance, on June 9, 2014, Defendants posted an advertisement on its Facebook page advertising the Concert which prominently featured Plaintiff Kelly as a headlining performer and directed consumers to purchase tickets from Defendant Ticketbreak.com, a division of Defendant Maple Core, Ltd.  *See*, June 9, 2014 Advertisement, attached as <u>Exhibit C</u>.

34.     Moreover, Defendants placed the same advertisement with the Niagara Falls Tourism website.  *See*, Niagara Falls Tourism Page, attached as <u>Exhibit D</u>.

35.     On June 18th and 19th 2014, Defendants posted tweets on Twitter, once again advertising the Plaintiff Kelly would be performing at the Concert and embedded images of Plaintiff Kelly in the Tweets.  *See* June 18th and 19th Tweets, attached as <u>Exhibit E</u>.

36.     On June 19, 2014, Defendants issued a press release advertising that Plaintiff Kelly would be headlining the Concert and <u>One876Entertainment.com</u> directed consumers to go to <u>www.oneloveniagara.com</u> for tickets.  *See* June 19, 2014 Advertisement, attached as <u>Exhibit F</u>.

37.      On June 18th and 20th , 2014, Defendants, on their One Love Niagara Facebook page once again advertised that Plaintiff Kelly would be headlining the Concert.  See June 18th and 20th, 2014, Facebook Postings, attached as <u>Exhibit G</u>.

38.     As of July 2, 2014, Defendants continue to advertise on Defendant G98.7 (CKFG)'s website that Plaintiff Kelly is headlining the Concert and directs consumers to call Defendant <u>Ticketbreak.com</u>'s phone number to purchase tickets or to go to the <u>www.oneloveniagara.com</u> website to purchase tickets, which in turn directs consumers to purchase tickets through Defendant Ticketbreak.com.  *See* G98.7's Advertisement, attached as <u>Exhibit H</u>.

39. Plaintiff Kelly forewent other lucrative engagements in order to reserve his professional availability for this Concert.

40. Plaintiff Kelly incurred expenses in preparing to be present for this Concert.

41. As of July 2, 2014, only two (2) days before the Concert is to begin, Defendants continue to use Plaintiff Kelly's name and likeness in connection with advertising their Concert.

42. Plaintiff Kelly is the owner of the United States' registered tradename "R. Kelly" as it related to entertainment services in the nature of live musical performances on the principal register under registration number 2638246. *See* Status Search Printout from tsdr.uspto.gov, attached as Exhibit I.

43. To date, Plaintiff Kelly has not licensed his tradename to any of the Defendants for use in advertising their Concert.

**COUNT I**
**BREACH OF CONTRACT AGAINST**

44. Plaintiff realleges and incorporates by reference Paragraphs 1 through 43 of this Complaint, as if fully alleged herein.

45. As described above, the June 20, 2014 Written Offer offered by Defendants and accepted by Plaintiff Kelly on June 23, 2014 constitutes a valid contract.

46. Defendants sending of the June 20, 2014 Written Offer to Plaintiff was an offer, and Plaintiff accepted this offer written acceptance on June 23, 2014 forming the "Performance Agreement."

*Contract Formation: Consideration*

47. The Performance Agreement is supported by consideration in the form of an exchange of mutual promises. Plaintiff agreed to perform for 60 minutes and be available

8

for a meet and greet for an addition 30 minutes. In exchange, Defendants promised to pay Plaintiff $200,000.00.

48. In addition or in the alternative, the Performance Agreement is supported by further consideration in the form of each party foregoing legal obligations and rights. Plaintiff forewent booking alternative performances. Defendants advertised that Plaintiff Kelly would be headlining their Concert.

*Defendants' Breach of Express Terms*

49. Rather than executing a long form agreement in good faith, after Plaintiff Kelly accepted Defendants' material terms, Defendants informed Plaintiff that they would not honor the Performance Agreement, thereby breaching the agreement.

*Defendants' Breach of Implied Contract Terms*

50. The Performance Agreement, like all contracts entered into in Illinois, contained an implied duty of good faith and fair dealing. Defendants had a duty to perform its obligations under the Performance Agreement consistent with its duty of good faith and fair dealing and Defendants breached the same by unilaterally refusing to honor the same while continuing to use the goodwill and commercial value of Plaintiff Kelly to advertise the Concert and entice consumers to purchase tickets.

*Causation and Damages*

51. As an actual and proximate result of Defendants' breaches of these express and implied contractual terms described herein, Plaintiff Kelly has suffered harm and is threatened with additional harm. Plaintiff has been damaged insofar as he is being denied his performance fee of $200,000.00, he forewent other performance opportunities to be present for Defendants' Concert; moreover his reputation has been damaged in that his

fans are now expecting him to perform and have undoubtedly purchased tickets to see him perform only to be disappointed to find out that he will not be performing, through no fault of his own. Moreover, he incurred expenses in preparing to be present at Defendants' event, among others to be shown at trial.

52. Plaintiff has attempted to mitigate his damages in that he has sought replacement performances, but given the late notice and Fourth of July holiday weekend, Plaintiff has not been successful in booking an alternative performance.

*Specific Performance*

53. As a result, monetary damages may be insufficient to remedy Plaintiff's reputational damages and Defendants should be required to specifically perform under the terms of the Performance Agreement.

54. *In the alternative*, if the Court determines that an award of damages will be a sufficient remedy, Plaintiff seeks damages for Defendant's breach of contract to the maximum extent allowed by law, and, in any case, interest, costs, and attorneys' fees in an amount to be determined at trial.

**COUNT II**
**UNFAIR COMPETITION AND FALSE ENDORSEMENT**

55. Plaintiff realleges and incorporates by reference Paragraphs 1 through 54 of this Complaint, as if fully alleged herein.

56. Defendants, by their unauthorized appropriation and use of Plaintiff's tradename, "R. Kelly," have engaged, and are continuing to engage, in acts of wrongful deception of the purchasing public, wrongful designation as to the source and sponsorship of goods and services, wrongful deprivation of Plaintiff's good name and reputation, and the

wrongful deprivation of Plaintiff's right to public recognition and credit as owner of the tradename "R. Kelly."

57. Plaintiff's action concerning Defendants' unfair competition and trade practice and false endorsement is related to Plaintiff's breach of contract action since both actions are based on the same operative facts.

58. Since at least on or about May 27, 2014 to the date of filing this complaint, Defendants have marketed their concert by advertising that "R. Kelly" will be performing at the Concert, without Plaintiff Kelly's permission and without intending to actually pay Plaintiff Kelly to perform at the Concert as previously agreed. As a result, there is consumer confusion in that Defendants have advertised that "R. Kelly" will be performing, when Plaintiff Kelly in fact, will not be performing and never granted Defendants the right to use his tradename in connection with marketing their Concert. Such conduct constitutes an unfair trade practice; unfair competition and false endorsement under the Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a) Lanham Act and Illinois Uniform Deceptive Trade Practices Act (UDTPA), 815 ILCS 510/1.

59. These acts of unfair competition; false endorsement; and unfair trade practices against Plaintiff have caused Plaintiff damages in that Plaintiff's fans have purchased tickets to see Plaintiff Kelly perform under the tradename "R. Kelly," when Plaintiff Kelly will not be performing due solely to Defendants' actions. As a result, the R. Kelly fans will be disappointed, tarnishing the reputation of the trade name.

## COUNT III
## INFRINGEMENT OF THE ILLINOIS RIGHT OF PUBLICITY ACT

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 of this Complaint, as if fully alleged herein.

11

61. 765 ILCS 1075/30 of The Illinois Right of Publicity Act provides *in pertinent part*: "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative."

62. 765 ILCS 1075/40, provides *in pertinent part*:

> (a) A person who violates Section 30 of this Act may be liable for either of the following, whichever is greater:
> (1) actual damages, profits derived from the unauthorized use, or both; or
> (2) $1,000.
>
> (b) Punitive damages may be awarded against a person found to have willfully violated Section 30 of this Act.

63. 765 ILCS 1075/50 permits this Court to issue injunctive relief, including "such temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act."

64. 765 ILCS 1075/55 permits this Court to "award to the prevailing party reasonable attorney's fees, costs, and expenses relating to an action under this Act."

65. Defendants do not have a written consent to use Plaintiff's name and/or likeness in connection with offering for sale tickets to their Concert and as a result, Defendants willfully violated 765 ILCS 1075/30 and Plaintiff is entitled to actual damages, punitive damages and attorneys' fees and costs for bringing this claim.

66. Plaintiff's action concerning Defendants' violation of Plaintiff's Right of Publicity is related to Plaintiff's breach of contract action since both actions are based on the same operative facts.

**WHEREFORE**, Plaintiff Kelly, by and through his attorney, Law Office of Heather L. Blaise, P.C., request judgment against the Defendants, jointly and severally, for:

1. Breach of contract damages in the amount of $200,000.00;

2. Compensatory damages in the form of damage to reputation;

3. Compensatory damages for those expenses Plaintiff incurred in preparing to be present to perform at the Concert;

4. *In the alternative*, an order requiring Defendants to specifically perform the Performance Agreement;

5. An accounting for, and payment to the Plaintiff as actual damages, all the following sums:

    a. All gains, profits and advantages derived by Defendants as a result of their unfair trade practices; unfair competition; and false endorsement;

    b. All gains, profits and advantages derived by Defendants as a result of their infringement of Plaintiff's tradename and name and likeness;

6. Additional damages for an amount determined at trial for unfair and deceptive trade practices, competition and false endorsement;

7. Punitive damages for willful violation of 765 ILCS 1075/30;

8. Reasonable attorney fees;

9. The costs of this action including, but not limited to, expert fees;

10. Enjoining Defendants from using Plaintiff's name and likeness and/or tradename; and

11. Such other and further relief as the court deems proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

                                      Respectfully submitted,

                                      /s/ Heather L. Blaise
                                      One of Plaintiff's attorneys

Heather L. Blaise
20 N. Clark St., Suite 3100
Chicago, Illinois 60602
312-448-6602
ARDC No. 6298241

Dated: August 8, 2014